## SWIFT v. CHICAGO & N. W. RY. CO. et al.
### Civ. A. No. 265.

United States District Court
S. D. Iowa, Central Division.
Feb. 9, 1944.

Frank L. Mulholland, Clarence M. Mulholland, Willard H. McEwen, Toledo, Ohio, Edgar Musgrave, Walter W. Selvy, Des Moines, Iowa, for plaintiff.

Davis, McLaughlin & Hise, Des Moines, Iowa, for defendant.

DEWEY, District Judge.

A dispute having arisen between an employee and his railway company, employer, the same was duly referred and an award made in his favor by the National Railroad Adjustment Board.

The order of the Board not having been complied with he brings this action in conformity with Section 153(p) of the Railway Labor Act, Title 45 U.S.C.A., and under the following provision:

"If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner * * * may file in the District Court of the United States * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit * * * shall proceed in all respects as other civil suits, except that on the trial of such° suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, * * *".

### The Facts.

The evidence discloses that C. D. Swift entered the service of the Chicago & North Western Railway Company, as a machinist at the Des Moines engine house Dec. 2, 1915, and continued in the service of the Railway Company and its Trustee in Bankruptcy with some interruptions until May 6, 1942, and on Oct. 27, 1942, he resigned. He was made working foreman (nights) on Sept. 1, 1936, and the position was reclassified in 1939 as mechanic-in-charge.

C. M. Runner entered the service of said company as a machinist in 1910 and at Des Moines in 1923 as night roundhouse foreman and took the position of day engine house foreman in December 1938, which he has held with some interruptions to the present time. His position was also renamed in 1939 as mechanic-in-charge

(days). There was no change in the duties when the names were changed in the positions designated as engine house foreman, working foreman or mechanic-in-charge.

The day man did the clerical work and correspondence with the roundhouse and his pay was $15 per month more than was paid for the night position.

On April 20, 1942, the position of mechanic-in-charge nights was abolished because of slack work, effective May 1, 1942. Swift was the holder of that position at the time and on the abolishing of his position he claimed seniority rights over Runner at Des Moines and asserted he was entitled to take Runner's job as day mechanic-in-charge.

Master Mechanic Whitford being uncertain as to the rights of the parties arranged with Runner and Swift to allow Swift to take the place temporarily until he could ascertain who was entitled to it. On May 6, 1942, he advised them that Runner was entitled to the place and Runner on May 7th reassumed the position and has continued in the same ever since.

During the period May 7, 1942, to Oct. 27, 1942, when Swift resigned as employee of the Trustee, he earned in other employment the sum of $952.60. If he had occupied the position of mechanic-in-charge days during that period he would have received $1,159.22 in wages.

During the period in controversy, the Chicago & North Western Railway Company was undergoing reorganization under the provisions of Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, and was being operated by a trustee. By order of this court on the request of the defendants and with the approval of the plaintiff, and on account of the death of the Trustee and the nearness of the completion of the reorganization proceedings, the Chicago & North Western Railway Company, Debtor, is substituted for Charles M. Thomson, former Trustee, and the case is to proceed against the substituted defendant with the same effect as though the former Trustee had continued as defendant here.

The proceeding before the Adjustment Board was against the Chicago & North Western Railway Company and no reference was made to the fact that that company was being operated by a trustee in bankruptcy. At the hearing, however, the appearance for the employer was Mr. G. F. Stevens, who was director of personnel, representing the Chicago & North Western Ry. Co., Charles M. Thomson, Trustee.

The employes' statement of facts; position of employes; carrier's statement of facts; position of carrier; and certain governing working agreements between employer and employe are set out in the record of the proceedings before the Board, with the following findings:

"The Second Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

"The carrier or carriers and the employe or employes involved in this dispute are respectively carrier and employe within the meaning of the Railway Labor Act as approved June 21, 1934.

"This division of the Adjustment Board has jurisdiction over the dispute involved herein.

"The parties to said dispute were given due notice of hearing thereon.

"Under provisions of memorandum agreement effective June 1, 1939 (Exhibit B), the classification of positions covered thereby was changed from working foreman to mechanic-in-charge. Under provisions of agreement of 1921 (Exhibit A), vacancies in positions of working foreman were filled by appointment. However, in revisions of said agreement, effective June 1, 1939, (Exhibit B), Item 7 was agreed to, which provides:

"'In filling positions of mechanic-in-charge, senior mechanics at the point will be given preferred consideration.'

"The same principle should apply in reverse order when reducing the position of 'mechanic-in-charge.'

"Mr. Swift, who was senior to Machinist Runner should have been given preferred consideration for the position in question.

"Award

"Claim sustained."

The record has been printed and a copy thereof attached to plaintiff's complaint and introduced in evidence in this action.

Mr. Swift having resigned from all positions with the carrier on Oct. 27, 1942, does not ask for reinstatement in this action, but does in his complaint ask "that the court order an accounting to be made of all sums due from the defendant railway to the plaintiff, C. D. Swift, on account of facts herein set forth and enter a judgment for the sum or sums so found to be due." And he also asks for attorney fees for services performed in this litigation.

### Questions for determination.

The three controlling questions to be determined as presented by the issues raised by the pleadings and in arguments to the court are:

1st, whether the fact that the proceedings and order of the Adjustment Board were directed in terms to the Chicago & North Western Railway Company prevents a judgment against the Trustee in these proceedings.

2nd, whether the agreements in existence at the time of the controversy between the carrier and its employes regarding seniority rights, correctly interpreted, confer upon the plaintiff the rights claimed by him. And

3d, in the event the plaintiff is entitled to recover, should there be a set-off against his wage loss the amount earned by him in the service of other employers.

### Findings.

■ First. I find that under the contracts and agreements existing between employer and employee at the time of the reduction in force at the roundhouse at Des Moines that C. D. Swift was entitled under the rule of seniority to the position of "mechanic-in-charge days" as demanded by him.

■ I am unable to agree with the reasoning of the Adjustment Board, but I do agree with the result.

Rule 25 of the effective rules provides:

"When it becomes necessary to reduce expenses, the force at any point or in any department or subdivision thereof shall be reduced, seniority as per Rule 28 to govern; the men affected to take the rate of the job to which they are assigned.

"Five days' notice will be given men affected before reduction is made, and lists will be furnished local committee."

It seems to me from this rule that when a reduction in the force at any point is made by the Railway Company that all positions become open for claims of seniority by persons entitled thereto.

The rule does not provide for a discharge in the case of a reduction in force of any individual, but does provide that in such event seniority shall prevail.

The railway company appears to have so construed the rule at the time as in conformity therewith it did post notice on the bulletin board of the reduction which was to be made; and C. D. Swift, within the period prescribed by said notice, formally made his demand for the position by reason of his seniority at the point where the changes were to take place.

■ Second. I find that, as far as this proceeding is concerned, the fact that the hearing before the Board was in form as against the Chicago & North Western Railway Company and not as against the Trustee does not prevent a recovery by C. D. Swift as against the Trustee.

This finding perhaps requires that the court determine the nature of these proceedings.

■ Before there were any written opinions on this question I tried to analyze the procedure in an opinion in the case of Cook v. Des Moines Union Ry. Co., 8 Cir., 16 F.Supp. 810. Subsequent opinions have not added much in clarifying the procedure and I still adhere to my opinion in that case with the possible exception that emphasis was there made on the proceedings being an action at law while the statute provides that the action shall be a civil action which includes both law and equity proceedings. However, that case was at law, as is the case at bar, although the complainant here does ask for equitable relief in the nature of an accounting as between himself and the defendants.

The action is not on the award or to enforce the award of the Adjustment Board; nor is it a question of what the Congress might have done in the way of a review.

Discussions regarding the procedure are found in some of the cases; most of them holding as I did in the Cook case, supra, that the action here is de novo. Order of Sleeping Car Conductors v. Pullman Co., D.C., 47 F.Supp. 599; Estes v. Union Terminal Co., 5 Cir., 89 F.2d 768; Washington Terminal Co. v. Boswell, 75 U.S. App.D.C. 1, 124 F.2d 235; Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691. And see Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; and Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

In the case of Washington Terminal Co. v. Boswell, supra, Judge Rutledge interprets the words in the statute [75 U.S. App.D.C. 1, 124 F.2d 241], "prima facie evidence of the facts therein stated", as meaning that such facts had the probative effect of the evidence of expert testimony.

In the Meeker v. Lehigh Valley Co. case, 236 U.S. 412, 35 S.Ct. 328, 335, 59 L.Ed. 644, Ann.Cas.1916B, 691, the Supreme Court construes a similar provision with reference to the findings of the Interstate Commerce Commission being prima facie evidence of the facts therein stated, as follows:

"In principle it is not unlike the statutes in many of the states whereby tax deeds are made prima facie evidence of the regularity of all the proceedings upon which their validity depends."

However, I do not think it is necessary to try and analyze what the Congress intended to mean as the statements in the Act itself are clear and unambiguous.

■ The nature of these proceedings, therefore, being an independent proceeding and the hearing before the Board only being a condition precedent to the right of the institution of a civil suit in this court, the fact that there may have been errors in the proceedings before the Board is not controlling, but under the procedure are to be corrected in the proceedings here. 89 F.2d 768, 771, supra; 124 F.2d 235, supra.

The proceedings before the Board were certainly not erroneous in the sense that they did not constitute compliance with the statute of submitting the dispute to arbitration before bringing this action, and the Railway Company, being a party defendant here, is given ample protection against a judgment being had against it where the evidence does not warrant; and the Trustee is protected in all his legal rights.

The evidence does conclusively show that no judgment should be entered as against the Chicago & North Western Ry. Co. were it not for the substitution by court order, as the breach of the contract was by the trustee in bankruptcy and not by the Railway Company as such.

■ Third. I find that the defendant is entitled to an offset as against the plaintiff's claim for loss of wages.

The plaintiff concedes that such is the rule at common law and advances no persuasive reason why this rule should not prevail in this civil action.

The statute does not provide for a penalty in this regard and I think the plaintiff himself recognizes this common-law rule as he asks in his complaint for an "accounting" and not for a penalty.

### Judgment

I therefore find that the plaintiff is entitled to judgment as against the Chicago & North Western Railway Company for the sum of $206.62.

### Attorney Fees.

■ The statute only provides for one attorney fee. Considering the amount recovered, I think that the plaintiff should be allowed the sum of One Hundred Dollars as attorney fees.

The Clerk will therefore enter the following order:

The above entitled action having come on for hearing in open court at Des Moines, Iowa, on the 6th day of January, 1944, evidence is introduced and arguments had, and the court being advised;

Finds for the plaintiff, C. D. Swift, as against the defendant, Chicago & North Western Railway Company, in the sum of Two Hundred Six and 62/100 Dollars ($206.62) and an attorney fee of $100 in favor of plaintiff's attorney. Judgment to be accordingly entered. All parties except.